## MICHAEL DWYER
### vs.
## FOXON TRAP ROCK CO.

Superior Court     New Haven County     File #41561

Present: Hon. ALLYN L. BROWN, Judge.

Samuel E. Hoyt,          Attorney for the Plaintiff.

J. B. Morse,          Attorney for the Defendant.

## MEMORANDUM FILED JUNE 25, 1935.

BROWN, J. This is an action for damages and equitable relief brought by the plaintiff as the owner of a twenty-three acre farm in East Haven, against the defendant company as operator of a trap rock quarry on adjoining land to the west, for redress for the violation of his rights and for damages sustained by him by the blasting operations carried on by the defendant in its quarry. The plaintiff contends that on very many occasions since February 1, 1931 these blasts have resulted in a severe concussion affecting him and his property injuriously, and also in the throwing of quantities of rock fragments onto his premises. All of these claims and all of the allegations of the plaintiff's complaint are denied by the defendant.

From the concussion and vibration the plaintiff claims to have sustained two specific items of damage: (1) the cracking and weakening of the foundation and masonry connected with his house; and (2) the killing of chickens in the shell about to be hatched, obliging him to give up the raising of young chicks. I find that the plaintiff has failed to sustain his burden of proving either of these elements of damage.

From the throwing of fragments of rock onto the plaintiff's property, he claims these specific items of damage: (1) destruction of crops, (2) interference with the raising of crops; (3) depreciation of the value of the farm; and (4) impairment of the plaintiff's own health and resulting extreme nervousness. The law is clear that any such throwing of rocks onto the plaintiff's land by blasting done by the defendant, would constitute a violation of the plaintiff's rights, and counsel for the defendant in effect expressly admitted this during argument, when they stated in response to the court's inquiry, that the plaintiff is entitled to a permanent injunction along the lines of the existing temporary injunction prohibiting such conduct. The most vital issue of fact in the case is as to whether or not rocks have been thrown onto the plaintiff's land by the defendant's blasts during the period in question. Most of the evidence bears upon this issue, the plaintiff having offered testimony of about seventy-five such blasts throwing a total of some two hundred forty rocks onto his land and the defendant having offered evidence that no rock was ever thrown out of its quarry even, by any blast, let alone onto the plaintiff's land.

Undisputed evidence offered by the defendant reveals that from 1931 to date, it has engaged in two sorts of blasting in its quarry, "primary" and "secondary". The former is of two kinds, "snake-hole" and "tunnel" blasting. Each of these involves weeks of preliminary preparation in the drilling of deep holes, or the construction of a "T" shaped tunnel in the ledge, and the loading of up to 12,000 pounds of dynamite for a single blast. From one to five such blasts have been fired each year. The purpose and effect of primary blasting is to dislodge the rock from its natural condition in the ledge, to break it up, and to bring it down into the quarry pit, preliminary to removal to the crusher to be broken into small sizes for commercial use. Secondary blasting is that done to reduce those fragments dislodged by primary blasting, which are too large to handle with the power shovel or to be broken up by sledge hammers, to such size that they can be so dealt with. Fragments up to twenty-five tons in weight the defendants broke up by this kind of blasting, and its evidence was that since 1931 it has fired between 150 and 200 such blasts in its quarry; and that no method of covering was ever employed to prevent fragments of stone from being thrown thereby.

It is my conclusion upon the conflicting evidence that many times since 1931 fragments of rock have been thrown onto the plaintiff's land by secondary blasting done in the defendant's quarry. While the charges of dynamite used in this process are relatively small, ordinarily less than a pound per hole, usually drilled to two-thirds the depth of the rock to be blown, a number of varying factors affect the distance to which fragments may be thrown by the blast. Such are: the position of the rock and of the drill hole therein, the depth of the hole, the size of the rock, the quantity of dynamite, the texture of the rock, etc. It was fragments from such blasts, which the defendant took no measures to safeguard by covering, that repeatedly landed on the plaintiff's farm.

While I am not satisfied upon the evidence that the plaintiff is entitled to an award of damages for either crops destroyed as such, or depreciation in the value of his farm, I do find that he should be compensated for the interference with the raising of crops thereon, and for the impairment of his health, which resulted from the defendant's wrongful conduct. Nor does the fact that concrete evidence as to the exact amount of these two items of damage is lacking, defeat the plaintiff's right to recover therefor. **Ward vs. General Ice Cream Corp., 118 Conn. 363, 367.** I find that much of the time the defendant's conduct caused such reasonable apprehension of injury to anyone cultivating the plaintiff's crops during the hours that the quarry was in operation, as to seriously interfere with such cultivation, and that $200 per season or a total of $800 is reasonable compensation for the damage so sustained by the plaintiff. **Sizer vs. Waterbury, 113 Conn. 145, 151; II Sedgwick on Damages (9th ed.) 352, §184; II Joyce on Damages §1057; Hunter vs. Farren, 127 Mass. 481, 34 Am. Rep. 423.** Up to the fall of 1931 the plaintiff had been a hard-working active farmer, though he had no doubt become apprehensive by reason of the rocks thrown onto his property from time to time by the defendant's blasts. In September 1931, several such stones landed some 75 feet from him as he was digging potatoes in his field, while one landed almost at his feet, giving him a terrific fright. This experience brought on a nervous breakdown which rendered the plaintiff fearful, nervous, fidgety, unable to sleep and unable to work, and from which he has never recovered. For this injury the plaintiff is entitled to compen-

sation. 8 R.C.L. 527, §81; Mitnick vs. Whalen Bros., 115 Conn. 650. I find $1200 to be reasonable compensation therefor.

The testimony of the witness Bechtel, recalled by the court after argument of the case had begun, indicates that not only is it feasible to cover such secondary blasting as the defendant engages in, without great expense, but that good practice often requires it. Be this as it may, the plaintiff is entitled to a permanent injunction against the throwing of any rocks upon his land by the defendant for the future.

Judgment may be entered for the plaintiff to recover $2000 damages and costs of the defendant, and counsel may submit a draft of decree for a permanent injunction in accord with this memorandum.